IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03198-BO

QUINCY R. JONES, )
  )
      Plaintiff, )
  )
v. )    ORDER
  )
DEANTRE NICHOLS, )
  )
      Defendant. )
  )

The matter now is before the court on the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 22), filed by defendant Deantre Nichols ("defendant"). The matter also is before the court on defendant's motion to seal (DE 29). In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendant's motion for summary judgment and denies the motion to seal.

## STATEMENT OF THE CASE

Quincy R. Jones ("plaintiff"), a state inmate, filed this unverified civil rights complaint, pro se, pursuant to 42 U.S.C. § 1983, alleging a claim pursuant to the Eighth Amendment to the United States Constitution arising out of a use of force incident at Maury Correctional Institution ("Maury") on December 2, 2023. Specifically, plaintiff alleged defendant used excessive force against him when defendant used a taser on him despite knowing plaintiff had a heart condition. ((DE 1), p. 5). Plaintiff also named the North Carolina Department of Adult Correction ("DAC") as well as Maury's Assistant Warden Gray and the DAC's Secretary Eddie M. Buffaloe, Jr. as defendants. Plaintiff attached to his complaint a grievance in which he stated: "Sgt Nichols then told his staff to step back, and shot me with the taser; And Sgt. Nichols kept shooting me with the

taser, even after I got back on the floor; I asked what was that for, and Sgt. Nichols said to let you know I can be a smart a[--]." ((DE 1-1), p. 2).

On December 17, 2024, the court conducted an initial review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed him to proceed with his excessive force claim against defendant, but dismissed the remaining defendants from this action. On April 17, 2025, the court entered a scheduling order providing a discovery deadline of July 16, 2025, and a motions deadline of August 15, 2025. See (DE 18). Defendant answered plaintiff's complaint on April 16, 2025, and plaintiff filed a response to defendant's answer on May 30, 2025.[1] See (DE 17, 20).

On August 15, 2025, defendant moved for summary judgment, arguing plaintiff cannot establish an Eighth Amendment violation, and, alternatively, asserted the affirmative defense of qualified immunity. Defendant also filed a statement of material facts in support of his motion for summary judgment and an appendix, which included: a declaration from defendant; a declaration from plaintiff's counsel; plaintiff's offender public information page; plaintiff's disciplinary infraction history; the disciplinary report; the December 2, 2023, incident report; excerpts from Maury's standard operating procedures; the DAC's use of force policy; a declaration from Nurse Supervisor Daryl Rogers; a declaration from Antoine Ingram, Maury's Associate Warden for programs; excerpts from plaintiff's medical records; and video footage. Defendant also filed a motion to seal. Plaintiff responded to defendant's motion for summary judgment, and verified his response. Plaintiff attached to his response a letter he sent to Lieutenant Massey on August 23, 2025. Defendant replied.

---

[1] The Federal Rules of Civil Procedure do not permit litigants to file responses to an answer, unless the defendant's answer contains a counterclaim or crossclaim or the court specifically orders plaintiff to respond to the answer. See Fed. R. Civ. P. 7(a). Here, defendant did not file a counterclaim or crossclaim with his answer and the court has not ordered plaintiff to respond to defendant's answer. Thus, the court will not consider plaintiff's response to defendant's answer (DE 20). See Garabedian v. Lanteigne, No. 1:08cv122221, 2009 WL 6871133, at *1 (E.D. Va. Aug. 26, 2009) (citing Malbon v. Pa. Millers Mutual Ins. Co., 636F.2d 936, 938 (4th Cir. 1980)).

## STATEMENT OF FACTS

At approximately 9:00 p.m. on December 2, 2023, defendant conducted security rounds with Correctional Officer Taylor on Maury's Tan Unit A-Pod. ((DE 25-10) ¶ 3). As defendant and Officer Taylor entered the unit, defendant observed plaintiff lying on the wet floor between two bunks, yelling and swinging his arms. (Id.); (Video: 9:01:33-9:01:46).[2] Defendant directed plaintiff to get up, but plaintiff continued to yell incoherently and lay in the water. ((DE 25-10) ¶ 3). Defendant believed plaintiff to be under the influence of an unknown substance, and made the decision to move plaintiff out of the dormitory for safety and because plaintiff was impaired. (Id. ¶¶ 3-4). Plaintiff weighed approximately three hundred fifteen pounds at that time. ((DE 28-6), p. 2). Accordingly, defendant called for additional staff to assist with getting plaintiff off the ground. ((DE 25-10) ¶ 4; (DE 27) ¶ 13).[3] Sergeant Speight and Officer Joyner then arrived on the scene. ((DE 27) ¶ 14).

The officers next struggled to get plaintiff off the floor and into a standing position. (Video: 9:02:42-9:03:21). After assisting plaintiff from the ground, the officers attempted to get plaintiff to submit to handcuffs and plaintiff resisted by dragging his feet and pulling away from the officers. (Id. 9:03:16-9:03:35); (DE 25-10) ¶ 5). Plaintiff refused defendant's direct orders to submit to restraints by "aggressively pulling away and flex." ((DE 25-10) ¶ 5). Defendant next used his taser to "regain control of the situation." (Id. ¶ 6; Video: 9:03:36). After the first taser strike, plaintiff continued to resist and defendant "re-arch[ed]" the taser in an effort to get plaintiff to a flat surface or the floor. ((DE 25-10) ¶ 6; Video: 9:03:36:-9:03:58). Plaintiff continued to

---

[2] The entire incident was captured by surveillance video.

[3] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam); see Fed. R. Civ. P. 56(e)(2). Plaintiff did not controvert defendants' statement of material facts. Accordingly, the court adopts defendants' uncontroverted statement of materials facts.

resist by pulling his arms away and attempted to aggressively roll away from staff. ((DE 25-10) ¶ 6). Defendant "re-arch[ed] the taser two more times until staff could regain control of the situation." (Id.; Video: 9:03:36-9:04:03). Defendant ceased using the taser when correctional staff were able to get plaintiff under control. ((DE 25-10) ¶ 7). At one point, plaintiff continued to resist by kicking. ((DE 25-5), p. 3). In response, Officer Speight placed her right foot beside plaintiff's feet to prevent plaintiff from kicking. (Id.); see also, (Video: 9:04:03-06).

Maury correctional officers next escorted plaintiff to the medical unit for a medical screening following the incident. ((DE 28-3) ¶ 4). Registered Nurse Lynch saw plaintiff and noted "scant" bleeding from the two taser prongs, one from his "left mid-back and one on his lower mid back." (Id.; (DE 25-5), p. 5; (DE 28-4). Nurse Lynch cleansed the area and applied band-aids. (Id.) While plaintiff has a history of high blood pressure, his blood pressure following the December 2, 2023, incident was 100/40. (DE 28-3) ¶ 4; (DE 28-4), p. 2, 3; (DE 28-2), p. 2). Nurse Lynch observed plaintiff appeared under the influence of a substance, and plaintiff ultimately admitted to her that he had taken K2.[4] ((DE 28-3) ¶ 4); (DE 28-4), p. 3). Nurse Lynch noted plaintiff's history of substance abuse. ((DE 28-4), p. 1). Nurse Lynch further noted plaintiff was non-compliant with his blood pressure medication. ((DE 28-6), p. 1). Nurse Lynch educated plaintiff to take his blood pressure medication as ordered and the risks of interactions between prescription drugs along with illicit drugs. ((DE 28-3) ¶ 4). Defendant states in his declaration that he did not have access to plaintiff's medical records and did not know plaintiff had any heart condition prior to the December 2, 2023, use of force incident. ((DE 25-10) ¶ 8). Plaintiff states

---

[4] K2 is a synthetic cannabinoid that is also known as Spice. See Reid v. Warden, Federal Corr. Inst. Istill, No. 5:19-2636-RMG-KDW, 2020 WL 6264903, at n. 2 (D.S.C. Aug. 19, 2020), adopting R&R, 2020 WL 5627142 (Sept. 21, 2020).

4

"[defendant] knew I was on a BiPap machine, and could possibly have other health issues, which I do." ((DE 34), p. 5).

On December 2, 2023, plaintiff did not have any requested or approved accommodation to prohibit correctional staff from using a taser on him.[5] ((DE 25-15) ¶ 6). Plaintiff subsequently pleaded guilty to an A-26 disciplinary offense for using K2 on December 2, 2023. ((DE 25-4), pp. 3, 9).

## DISCUSSION

A.  Motion to Seal

Defendant seeks a court order sealing the declaration of Daryl Rogers and the attached exhibits. Defendant also asks the court to seal his statement of material facts, memorandum in support of his motion for summary judgment, and appendix. The court has reviewed the motion under the governing standard. See, e.g., Doe v. Pub. Citizen, 749 F.3d 246, 272–73 (4th Cir. 2014). The court denies the motion to seal.

B.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[5] DAC medical professionals do not "clear" or preauthorize the use of a Conducted Electrical Weapon or taser on an inmates. ((DE 28-3) ¶ 7).

5

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

2. Analysis

Defendant raises the affirmative defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Plaintiff alleges defendant used excessive force against him in violation of the Eighth Amendment. To the extent plaintiff is suing defendant in relation to acts taken within his official capacity, any official capacity claim for monetary damages against defendant is DISMISSED. See Myers v. North Carolina, No. 5:12-cv-714-D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013), aff'd, 673 F. App' x 310 (4th Cir. 2016).

The court next turns to plaintiff's Eighth Amendment claim against defendant in his individual capacity. "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). "Deploying a taser is a serious use of force." Estate of Armstrong ex rel. Armstrong v. Vill. of

Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016). Accordingly, the court focuses its inquiry on the subjective prong of the Eighth Amendment test. See Brooks, 924 F.3d at 112.

"[A] prisoner must meet a heavy burden to satisfy the subjective component–that prison officials applied force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain and restore discipline." Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (4th Cir. 1986) (internal quotations omitted)). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Thomspon v. Virginia, 878 F.3d 89, 99 (4th Cir. 2017); Whitley, 475 U.S. at 321. The Fourth Circuit has held "corrections officers cross the line into an impermissible motive—using force maliciously" and for the "very purpose of causing harm," . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination[.]" Brooks, 924 F.3d at 113.

Applying the Whitley factors to the case at hand, the court begins with the first and third prongs–the need for the application of force and the threat reasonably perceived by defendant. The record reflects plaintiff was under the influence of K2 and that defendant was faced with a large and uncooperative inmate lying on the ground creating a disturbance. Plaintiff resisted the correctional officers' efforts to get plaintiff off the ground, into restraints, and out of the dormitory. Plaintiff refused defendant's repeated direct orders to submit to restraints and to allow the officers to get him to a flat surface. Under these circumstances, use of force was a necessary response to

7

plaintiff's impaired state and noncompliance with officers' direct orders which posed a risk to the corrections officers and to the prison population. Taylor v. Ramsey, No. 1:23-cv-00098-FDW, 2025 WL 492006, at *6 (W.D.N.C. Feb. 13, 2025), aff'd, No. 25-6198, 2025 WL 2965745 (4th Cir 2025); Freeman v. Deas, No. 5:18-CT-03113-M, 2020 WL 5491690, at *3 (E.D.N.C. Aug. 26, 2020) ("Because the record supports a finding that Deas' use of force was a necessary response to plaintiff's non-compliance with verbal commands and plaintiff's aggressive actions toward Deas, the first Whitley factor favors Deas."), aff'd, 2023 WL 8230805, at *2 (4th Cir. 2023); Geddings v. Roberts, No. 1:15CV264, 2018 WL 1626116, at *10 (M.D.N.C. Mar. 30, 2018) (citing United States v. Gore, 592 F.3d 489, 493 (4th Cir. 2010)). Based upon the foregoing, the first and third factors weigh in favor of defendant.

The court next addresses the second Whitley factor–the relationship between the need and the amount of force used. Here, the record reflects defendant acted with the intent to gain plaintiff's compliance so that the officers could apply restraints and escort plaintiff from the unit. Defendant's intent to use the taser only to gain compliance, and not for punishment, is supported by the fact that each of the correctional officers involved with the incident, including defendant, maintained a calm demeanor throughout the incident. Moreover, defendant submitted a sworn declaration stating: "[He] used the amount of force to regain control of the situation. Once other officers and I were able to get Plaintiff under control, I ceased to use the taser." ((DE 25-10) ¶ 7); see, Hagans v. Franklin Cty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012) (finding use of taser reasonable where arrestee refused to be handcuffed). Defendant's declaration is supported by the video evidence. Based upon the foregoing, the second Whitley factor weighs in favor of defendant.

8

The court now turns to the Fourth Whitley factor--defendant's efforts to temper the severity of a forceful response. The record reflects correctional staff decreased their use of force as the plaintiff began to comply with their orders. For instance, once plaintiff was on the ground and the officers were applying restraints, plaintiff's continued resistance by kicking his legs was met with an officer placing her leg between plaintiff's legs, and not further use of the taser by defendant. The fact that correctional staff took plaintiff for a medical assessment immediately following the incident further supports defendant's claim that he deployed his taser only to gain plaintiff's compliance. See Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (finding correctional officers did not make efforts to temper the severity of the force used where they did not secure the plaintiff medical treatment following the exposure to pepper spray). The fact that plaintiff suffered only minor injuries indicates that the force used was minimal. See Ellenburg v. Henderson Cnty. Jail, No. 1:14CV290, 2016 WL 1354980, at *4 (W.D.N.C. Apr. 5, 2016) (describing "two black eyes and a crooked nose" and "a cut [from] taser prongs" as "minimal"). Finally, there is no evidence that defendant knew plaintiff had a heart condition, and there was no order in place prohibiting the use of a taser on plaintiff. Thus, the fourth Whitley factor also weighs in the favor of defendant.

While plaintiff submitted a verified response to defendant's motion for summary judgment, he relied on only one allegation: "[Defendant knew I was on a BiPap machine, and could possibly have other health issues, which I do." ((DE 34), p. 5). Plaintiff's statement does not prove that defendant knew plaintiff had a heart condition on December 2, 2023, or that defendant used the taser knowing that plaintiff had a heart condition. Further, as stated, there was no order in place prohibiting the use of a taser on plaintiff for medical reasons. ((DE 25-15) ¶ 6). The record, additionally, reflects plaintiff's blood pressure was in normal range following the use of force incident. Finally, plaintiff has not presented evidence refuting defendant's evidence that plaintiff

9

disobeyed repeated direct orders, was impaired from the use of K2, or that defendant ceased using force when the correctional officers regained control over plaintiff. Thus, plaintiff has not met his burden of producing some evidence to demonstrate a genuine issue of material fact.

To the extent plaintiff relies on his unverified complaint and unsworn documents including grievances he attached to his complaint, unverified pleadings are insufficient to withstand an otherwise properly supported motion for summary judgment. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); see also, Fed. R. Civ. P. 56(c); King v. Hooks, No. 5:17-CT-3043, 2021 WL 1435294, *8 (E.D.N.C. Mar. 29, 2021), aff'd, 2022 WL 355770 (4th Cir. 2022); Huff v. Outlaw, No. 0:09-cv-00520-RBH, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."); Askins v. Belissary, No. 4:12-CV-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), aff'd, 564 F. App'x 46 (4th Cir. 2014) (emphasis in original); White v. Erdos, No. 1:20-cv-101, 2022 WL 474477, at *6 (S.D. Ohio Feb. 16, 2022), adopting R&R, 2022 WL 912494 (Mar. 29, 2022), appeal dismissed, 2023 WL 3393193 (6th Cir. Jan. 23, 2023); see also, Local Civ. R. 56.1. Based upon the foregoing, plaintiff has not met his burden of producing some evidence to demonstrate a genuine issue of material fact. Thus, plaintiff cannot establish an Eighth Amendment violation, and defendant is entitled to qualified immunity.

## CONCLUSION

In summary, defendant's motion to seal (DE 29) is DENIED. Defendant's motion for summary judgment (DE 22) is GRANTED. The Clerk of Court is DIRECTED to update the court's caption to reflect the full name for the party plaintiff identified as Sergeant Nichols is

10

Deantre Nichols. The Clerk also is DIRECTED to close this case.

SO ORDERED, this the 5 day of February, 2026

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge